UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TACARSHA C. BROWN,

     Plaintiff,

v.                               CASE NO. 8:22-cv-1982-SDM-NHA

HMSHOST CORPORATION,

     Defendant.

_____/

## ORDER

     Alleging that she was fired after two weeks of failing to appear at her job, Tacarsha Brown, appearing *pro se*, asserts against HMSHost Corporation twelve claims, including a claim for a violation of the Equal Pay Act, a claim for breach of contract, and several claims for discrimination and retaliation under both federal and Florida law. HMSHost moves (Doc. 27) for summary judgment. A February 23, 2024 order (1) observes that Brown submits no response; (2) warns Brown that the failure to respond to the motion for summary judgment will result in an order treating the motion for summary judgment as unopposed in accord with Local Rule 3.01(c); (3) gives Brown notice of the requirements for responding to a motion for summary judgment; and (4) extends through March 14, 2024, the time within which Brown may respond to the motion for summary judgment. Despite the extension, no response appears.[1]

_____

[1] Brown has filed no paper for more than a year. Any mail sent to Brown is returned, but Brown reports no change in address.

## BACKGROUND

In January 2022, HMSHost, which operates a Starbucks in the Tampa International Airport, hired Brown as a barista in the Starbucks in Tampa International Airport. Brown attended an orientation, at which she received training about HMSHost's workplace policies, including the policy to report harassment and the policy to share tips. On January 15, 2022, Brown reported for her first day of work. Brown and another new employee received from an experienced employee training on how to operate the cash register. While the experienced employee talked with the other new employee, a child approached the register holding money. Neither the experienced employee nor the other new employee acknowledged the child. After he was unable to order, the child returned to his parents. His mother walked to the counter and asked why her child could not order. The experienced employee told the mother that the employees never noticed the child, but Brown told the mother that the experienced employee was lying and that the employees said in front of the child that the employees "didn't like children." (Doc. 27-2 at 78:8–79:20)

The mother walked away and called someone on her cell phone. After the call, the mother returned to the counter, said "this is why you don't do people this way," and gave Brown a hundred-dollar tip. (Doc. 27-2 at 87:19–25) Brown refused to share the tip with the other employees, who reported Brown's refusal to Schiller Boussiquot, the general manager. Boussiquot spoke with Brown, reportedly attempted to "defuse the situation," and sent Brown home early. (Doc. 27-1 ¶ 8; Doc. 27-2 at 100:12–21)

Less than thirty minutes before her shift the next day, Brown texted Jimmy Tooke, a "multi-unit operations manager," and asked whether Brown should report for her shift.  (Doc. 27-1 ¶ 9)  Tooke never responded, and Brown failed to appear. After more than two weeks without contact from Brown, Tooke texted Brown and told her to return her identification badge.  Brown asked if she was fired, and Tooke responded "Schiller [Boussiquot] told you that day."  (Doc. 27-1 Ex. C)  According to Tooke, he "hastily misspoke" in his response because Brown was not fired by Boussiquot on January 15, 2022.  (Doc. 27-1 ¶ 11)  According to Brown, Boussiquot never told her that she was fired.  (Doc. 27-2 at 104:9–20)  On February 2, 2022, Tooke signed a "notice of termination," which reports that Brown was terminated because after leaving on January 15, 2022, she "never returned" to work.  (Doc. 27-1 Ex. D)

Brown filed with the EEOC a charge against Starbucks, not HMSHost. (Doc. 27-3 Ex. A)  The charge asserts that Brown experienced discrimination based on sex and race and experienced retaliation because she engaged in a protected activity.  Further, Brown claims that she "was subjected to remarks that were sexual in nature and geared towards females of color . . . ."  (Doc. 27-3 Ex. A)  Brown's charge never identified these "remarks," but at her deposition in this action Brown stated that an unidentified supervisor said to a group of employees (1) "Don't their mouth feel good when I send them over" and (2) "Keep trapping them right there."[2]

---

[2] Also, Brown alleges that the same unidentified supervisor told Brown that she "was a crab in a bucket that wasn't going anywhere." As presented by Brown, these statements are hearsay, but, because the statements are likely reducible to admissible form at trial and because HMSHost quotes the statements in the motion for summary judgment, this order considers the statements.

(Doc. 27-2 at 93:7–25)  When asked how these statements are sexual, Brown responded "You have to ask [the unidentified supervisor] because — ask him exactly and the person, the co-workers that said yes," but Brown claimed that she interpreted the statements as sexual.  (Doc. 27-2 at 94:10–96:25)

## ANALYSIS

### I.  <u>Equal Pay Act</u>

Brown accuses HMSHost of paying male employees more than Brown.  Under *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1077–78 (11th Cir. 2003), an employee may establish "a prima facie case of an Equal Pay Act violation by showing that the employer paid employees of opposite genders different wages for equal work for jobs which require equal skill, effort, and responsibility, and which are performed under similar working conditions."  (internal quotations omitted)  Brown proffers no evidence to establish this claim.  Brown alleges (supported by hearsay only) that an unidentified male employee, who worked for HMSHost longer than Brown, told Brown that he enjoyed an hourly wage that was higher than Brown's hourly wage.  But Brown can recall neither the employee's name nor the wage enjoyed by the employee.  (Doc. 27-2 at 143:22–145:19)  Further, Brown confirms she knows of no other employee who enjoyed a wage higher than the wage of similarly situated employees of the opposite sex.  (Doc. 27-2 at 146:8–20)  "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."  *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005); *Choate v. Atlanta Radio, LLC*, 2024 WL 1231207, at *2 (11th Cir. 2024) ("Moreover, unsupported factual

allegations, affidavits based on information and belief instead of personal knowledge, and mere conclusions cannot withstand a motion for summary judgment."). Brown's personal belief supported by a hearsay statement from an unidentified employee is insufficient to sustain Brown's claim under the Equal Pay Act.

## II. <u>Breach of Contract</u>

Brown contends that HMSHost's terminating Brown violated Brown's employment contract with HMSHost. But under Florida law, an employer can terminate "for any reason . . . [and] at any time" an employee whose employment is discretionary, that is, "at-will," but the employee cannot maintain an action for breach of the employment contract. *Wiggins v. S. Mgmt. Corp.*, 629 So. 2d 1022, 1025 n.4 (Fla. 4th DCA 1993) (quoting *DeMarco v. Publix Super Markets*, 360 So. 2d 134 (Fla. 3d DCA 1978), *aff'd*, 384 So. 2d 1253 (Fla.1980)). Brown was an "at-will" employee, and Brown adduces no contract (or other record material) establishing an employment agreement that entitles Brown to any money beyond the money owed for the hours that Brown worked before her termination. (Doc. 27-1 ¶ 5; Doc. 27-2 at 148:11–18) Further, Brown confirms that she received the money she was owed for the hours she worked before her termination. (Doc. 27-2 at 148:2–149:24) Summary judgment for HMSHost is warranted.

## III. <u>Discrimination and Retaliation Claims</u>

Brown's remaining claims comprise discrimination claims and retaliation claims under Title VII, Section 1981, and the Florida Civil Rights Act. Claims under each of these statutes share the "same analytical framework." *Jones v. United Space*

*All., L.L.C.*, 494 F.3d 1306, 1310 (11th Cir. 2007) ("Because the FCRA is modeled on Title VII, Florida courts apply Title VII caselaw when they interpret the FCRA."); *Shields v. Fort James Corp.*, 305 F.3d 1280, 1282 (11th Cir. 2002) ("[S]ection 1981 and Title VII[] have the same requirements of proof and use the same analytical framework."); *Edmond v. Univ. of Miami*, 441 Fed. Appx. 721, 723 (11th Cir. 2011) ("Discrimination claims under § 1981 and the FCRA are governed by the same requirements of proof and the same analytical framework applicable to Title VII claims."). Brown fails to proffer evidence sufficient to establish each claim.

## A.    Discrimination Claims

Brown, who alleges that she is a Mediterranean and Middle Eastern woman, alleges that HMSHost discriminated against her because of her race and sex.  Absent direct evidence of discrimination, a discrimination claim is analyzed under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Thompkins v. Morris Brown Coll.*, 752 F.2d 558, 563–64 (11th Cir. 1985).  Under *McDonnell Douglas*, Brown must establish "(1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outside her class more favorably."  *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1220–21 (11th Cir. 2019).  If Brown establishes the necessary predicate, HMSHost must establish a "nondiscriminatory reason" for the adverse action.  *Lewis*, 918 F.3d at 1221.  Brown must show that HMSHost's proffered reason is "merely a pretext for unlawful discrimination."  *Lewis*, 918 F.3d at 1221.

The only "adverse employment action" that Brown identifies is her termination, but Brown states "I don't believe that I was terminated because of my race." (Doc. 27-2 at 118:13–119:21)  Also, Brown fails to identify any "similarly situated employee" that was treated more favorably.  Even if Brown could establish the necessary predicate, HMSHost adduces record material showing that HMSHost terminated Brown because she failed to report for her shift on January 16, 2022, and because Brown for more than two weeks failed to contact her supervisors.  (Doc. 27-1 ¶ 9–11 and Ex. C)  Brown adduces no fact that would "permit a reasonable jury to rule in her favor" and to determine that HMSHost's reason for terminating Brown was pretextual.  *See Lewis*, 918 F.3d at 1217.

Also, Brown accuses HMSHost of sex discrimination based on sexual harassment.  To sustain this claim, Brown must establish that "(1) she is a member of [a] protected group, (2) was the subject of unwelcome sexual harassment, (3) the harassment occurred because of her sex, (4) the harassment affected a 'term, condition, or privilege' of her employment and (5) the employer knew, or should have known, of the harassment and failed to take remedial action." *Huddleston v. Roger Dean Chevrolet, Inc.*, 845 F.2d 900, 904 (11th Cir. 1988).

Brown proffers no evidence of harassment other than some non-explicit statements, which Brown interpreted as sexual,[3] by an unidentified supervisor.  Brown

---

[3] Brown must show both that she maintained "a subjective, good-faith belief" that the statements "constituted actionable sexual harassment" and that "her belief was objectively reasonable." *Tatt v. Atlanta Gas Light Co.*, 138 Fed. Appx. 145, 147 (11th Cir. 2005) (citing *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir.1999)). But nothing in the record explains how the unidentified manager's statements are sexual or why Brown interpreted the statements as sexual.

- 7 -

fails to explain how these statements affected a "term, condition, or privilege" of her employment, and despite receiving at her orientation training about reporting harassment in the workplace Brown adduces no fact showing that she reported the alleged harassment or that HMSHost knew of the alleged harassment.

**B.   Retaliation Claims**

Brown alleges that HMSHost terminated her because she "st[ood] up for [a] child customer and his mother."[4]  To sustain a claim for retaliation, Brown must establish that "(1) [she] engaged in [a] statutorily protected activity; (2) [she] suffered a materially adverse employment action; and (3) there was a causal link between the two."  *Dixon v. The Hallmark Companies, Inc.*, 627 F.3d 849, 856 (11th Cir. 2010).  If Brown establishes the necessary predicate, HMSHost must "articulate a legitimate, nonretaliatory reason" for the adverse action.  *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008).  If HMSHost articulates a legitimate reason, Brown must adduce facts showing that HMSHost's "proffered reason was merely a pretext."  *Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1135 (11th Cir. 2020).

Brown's "standing up for [a] child customer and his mother" is not a statutorily protected activity.  Even if Brown could establish that she engaged in a protected activity and that some "causal link" existed between the activity and her termination,

---

[4] In a different Count, Brown alleges that she was terminated because "she objected to cleaning the restaurant with chemicals because she feared for the safety of her unborn child." (Doc. 1-1 ¶ 116) Nothing in the record suggests that Brown was pregnant when she worked for HMSHost or that anyone asked Brown to clean using chemicals.

the undisputed material in the record establishes that HMSHost terminated Brown because of her failure to report for her shift on January 16, 2022, and because Brown for two weeks failed to contact her supervisors.  Brown adduces no fact suggesting that HMSHost's proffered reason for terminating Brown is pretextual.  Summary judgment for HMSHost is warranted.

## CONCLUSION

For these reasons and others stated by HMSHost, the motion (Doc. 27) for summary judgment is **GRANTED**.  The clerk (1) must enter a judgment for HMSHost Corporation and against Tacarsha C. Brown and (2) must close the case.

ORDERED in Tampa, Florida, on April 8, 2024.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE